Frances **LA PORTA**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 17526.

United States Court of Appeals
Fifth Circuit.

May 13, 1959.

————◆————

Clyde W. Woody, Houston, Tex., for appellant.

William B. Butler, U. S. Atty., Donald F. McNiel, II, John R. Green, Asst. U. S. Attys., Houston, Tex., for appellee.

Before JONES, BROWN and WISDOM, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

The case presently before us arises out of the same facts that gave rise to Giordenello v. United States, 1958, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503, reversing, 5 Cir., 1957, 241 F.2d 575, and Indiviglio v. United States, 1958, 357 U.S. 574, 78 S.Ct. 1381, 2 L.Ed.2d 1547, reversing, 5 Cir., 1957, 249 F.2d 549. Appellant, mother of Veto Giordenello, convicted in the same narcotics conspiracy, did not appeal.

But the issue before us is different from that in the cases above. It is the propriety of the District Court's denial of a belated motion for new trial.

Appellant was convicted on one count of the narcotics indictment on October 25, 1956, final judgment was rendered December 12, 1956, a motion for new trial was filed February 20, 1957, and

a hearing held on this motion September 29, 1958. Of course, as a motion for new trial must be made within five days of the verdict unless the asserted basis is newly discovered evidence, appellant must bring herself within the latter category here.[1]

The ground asserted was that a juror had received improper evidence during the trial from her husband, a United States Probation Officer. This was supported by the testimony of Attorney Campbell. He had served as defense counsel to one of the defendants in the original trial, and had talked with the jurors after their verdict. His equivocal testimony was that one of them, Forewoman Mrs. Montgomery, told him that her husband was a federal probation officer and that he had told her that "he had known them [the Giordenello family] since they were children and had had a lot of trouble with them." The implication is, of course, that either she (1) failed to indicate that she knew the defendants when questioned as a juror on voir dire, (2) had failed to abide by the Judge's admonition not to talk with anyone about the case during the trial, or (3) had received important evidence from extra-judicial sources. Although Campbell was equally vague as to this point, he testified that he probably told appellant's counsel of this occurrence the same day it happened—"I imagine."

Both Mr. and Mrs. Montgomery were called at the September hearing on this motion for new trial. Each categorically denied having talked about the Giordenello family or the case before or during the trial, and Mrs. Montgomery gave quite a different account of her encounter with Campbell—including typical banter

and small talk that he would like to represent her or her family as a lawyer.

Startled counsel for appellant observed, "Your Honor, it appears that someone is not telling the truth." To this the Judge replied, "I will agree with that statement." He commented upon appellant counsel's failure to talk with Mr. and Mrs. Montgomery prior to calling them as witnesses at the hearing as "a rather careless thing to do," but concluded that "I doubt if it merits any further action except to be more careful in the future in this Court."

The motion for new trial was overruled.

The claim is that "the Order denying the new trial was based on the theory that deportation could be prevented without a new trial," and that the Judge merely thereby "avoided the necessity of making such painful determination" of the merits of the motion. Appellant's counsel points to the context of the Judge's ruling:

> "I will overrule the motion for a new trial, but * * * I would have then and I will now, if it is not untimely, recommend that she not be deported."

As appellant points out, of course, the District Judge was powerless to make a "recommendation * * * that such alien not be deported," 8 U.S.C.A. § 1251 (b), by virtue of the new, express denial of this power in cases of narcotics violators, 8 U.S.C.A. § 1251(a)(11). 8 U.S. C.A. § 1251(b), as amended, 70 Stat. 575 (1956).

 Even if it be that the District Judge thought he could effectively prevent her deportation by his recommenda-

---

1. "Rule 33. New Trial

"The court may grant a new trial to a defendant if required in the interest of justice. If trial was by the court without a jury the court may vacate the judgment if entered, take additional testimony and direct the entry of a new judgment. A motion for a new trial based on the ground of newly discovered evidence may be made only before or within two years after final judgment, but if an appeal is pending the court may grant the motion only on remand of the case. A motion for a new trial based on any other grounds shall be made within 5 days after verdict or finding of guilty or within such further time as the court may fix during the 5-day period." F.R. Cr.P. 33, 18 U.S.C.A.

tion, and even had such thought been mistaken—neither of which we need determine here—the fact remains that he denied the motion for new trial. Moreover, there is record indication that the court purposely considered the credibility of the witnesses, and there is certainly an abundant justification for his concluding that appellant presented no "newly discovered evidence." We are positive that the Trial Court undertook to, and did, expressly pass upon the credibility issue at the heart of this complaint. Such a ruling was, after all, a matter within the discretion of the District Judge, McAteer v. United States, 5 Cir., 1945, 148 F.2d 992, 993, and on the record of this hearing we find no basis for holding that he abused that discretion here. Performance of the Court's legal duty was in no way diminished by the grace which the Judge thought, though mistakenly, he might extend in this family tragedy.

Affirmed.